Abraham N. Geller, J.
This is an action for damages for interference with and prevention of the right of sepulchre. The damages in such an action are for the wounded feelings and mental distress suffered by next of kin by reason of mutilation or dissection of the decedent’s body or the prevention of the right to bury his entire remains (see Darcy v. Presbyterian Hosp., 202 N. Y. 259, for review of ecclesiastical and common-law principles and their acceptance by American courts).
Decedent was a migratory Puetro Eican farm worker employed in 1958 on a farm near Newark, New York. He fell from a truck and struck his head. Thereafter he was treated for a fractured skull and was eventually referred to a leading neurosurgeon. He died in May, I960. The County Coroner authorized an autopsy which was performed by a Dr. Thomas. Pie removed the brain and turned it over to the afore-mentioned neurosurgeon at the latter’s request for the purpose of dissection and examination. The brain was never returned by the neurosurgeon and the body was buried without the brain. Defendants do not contend that any next of kin authorized such dissection and retention.
Decedent left a natural child, who was living in Puerto Rico with her mother. Decedent’s father also lived in Puerto Rico. Decedent’s employer sent telegrams within a few hours after death to his father as well as to his brother, who resided in New York City, asking for instructions. The father states that he replied, asking that the body be .sent to Puerto Rico for interment. The employer had had the body sent to a local undertaker, who is also sued herein. The employer states that the brother telephoned and spoke to the foreman and two Puerto Rican workers, requesting that a “ nice ” coffin be selected and arrangements made for shipping the body to a Puerto Rican undertaker, and to hold the body subject to his coming the next day, a Sunday. The brother denies that he ever made any call about funeral arrangements. In any event, he did not appear and the body was shipped by airplane on Monday to Puerto Rico. The undertaker received $900 from workmen’s compensation funds. Plaintiffs dispute $480 thereof as unauthorized and excessive, this apparently consisting of the charge made for the “ nice ” casket and embalming, which was in addition to the undisputed sealer casket necessary for air transport. The balance of workmen’s compensation death payment in the amount of $9,271 was paid for the benefit of the natural daughter.
*275 Ají action was brought in 1962 in the Federal District Court on behalf of the child by her mother as guardian for damages based on the right of sepulchre, and by the mother as administratrix of the estate with respect to the allegedly excessive funeral bill. The action was dismissed as against the undertaker on jurisdictional grounds. The remaining defendants included the employer and the neurosurgeon. Dr. Thomas was not then sued but produced as a witness on behalf of plaintiffs.
The trial court held as a matter of law that compensatory damages for wounded feelings and mental distress could not be recovered by the child, only four years old at time of death and too young to comprehend and suffer any such damages. The trial court, however, submitted the matter of punitive damages to the jury, which rendered a verdict for the defendants. The Court of Appeals for the Second Circuit affirmed the judgment in all respects (sub nom. Chaparro v. Jackson & Perkins Co., 346 F. 2d 677 [1965]) and the Supreme Court denied certiorari.
This action was thereafter commenced in this court in July, 1965. The plaintiffs are the father, the child by her mother as her guardian, and the mother as administratrix. The first cause of action is for damages for the unauthorized autopsy (not involved on this motion); the second is by the father against Dr. Thomas, the neurosurgeon, and the workmen’s compensation insurer which paid the neurosurgeon a fee for sectioning and examining the brain, and by the child against Dr. Thomas alone, for damages to both plaintiffs’ feelings in removing, mutilating and failing to return the brain to the body of decedent; the third is by the father and the child against the undertaker and other related defendants for damages to both plaintiffs’ feelings in holding the body for three days and conducting funeral services and a wake instead of sending it immediately to Puerto Rico as instructed; the fourth is by the mother as administratrix for the $480 allegedly excessive charge asserted against the undertaker and the employer’s manager who assisted in such payment being made.
The plaintiffs have moved for summary judgment on the second cause of action as against Dr. Thomas and on the third and fourth causes of action as against the undertaker. Dr. Thomas has requested summary judgment in his favor on grounds of res judicata, collateral and equitable estoppel, and Statute of Limitations. The undertaker has limited his request for summary judgment in his favor to the ground of the Statute of Limitations.
*276 As to the Statute of Limitations: This oause of action arose at time of death in May, 1960. If it was barred by the Civil Practice Act Statute of Limitations prior to September 1, 1963, the effective date of CPLR, it remains barred; if it was not barred on September 1, 1963, plaintiffs get the benefit of the Civil Practice Act or CPLR Statute of Limitations governing such action, whichever is longer (CPLR 218). Damages for wounded feelings and mental anguish arising from invasion of or interference with the right of sepulchre are clearly damages for a personal injury and the action in tort is one to recover for a personal injury (General Construction Law, § 37-a; Lubin v. Sydenham Hosp., 181 Misc. 870). The Statute of Limitations for an action to recover damages for a personal injury was (and still is) three years (Civ. Prac. Act, § 49). However, there was an exception to that provided in subdivision 2 of section 48 of the Civil Practice Act, where the liability was ‘ ‘ created by statute,” the action then being governed by the six-year statute. That exception no longer obtains under the CPLR (see CPLR 214, subds. 2, 5), but the question here is controlled by the Civil Practice Act Statute of Limitations. Plaintiffs claim applicability of subdivision 2 of section 48 of the Civil Practice Act on the ground that the Penal Law and the Public Health Law contain a number of regulatory and penal provisions indicating the limits and conditions of an autopsy. But “ liability created by statute,” to come under the six-year statute rather than the general three-year statute for personal injury actions, means a liability which would not have existed except for the statute, a new right of action otherwise unknown to law (see, e.g., Frank Shepard Co. v. Zachary P. Taylor Pub. Co., 234 N. Y. 465; Cimo v. State of New York, 306 N. Y. 143; Bevelander v. Town of Islip, 10 A D 2d 170). Liability for damages for invasion of right of sepulchre obviously was not 1‘ created by statute ’ ’ but is part of basic law (Darcy v. Presbyterian Hosp., supra).
The governing statute being three years, the father’s causes of action were barred after May, 1963. (Moreover, his action should be dismissible on grounds of equitable estoppel. In an action based on sepulchre, all interested parties’ rights should be settled in one action, as there can be but a single recovery. Brown v. Broome County, 8 N Y 2d 330. In Gostkowski v. Roman Catholic Church, 262 N. Y. 320, 325, the court said that it would be “ inconceivable that each member of the family could maintain a separate action to recover for mental pain and anguish ’ ’ and that ‘ ‘ in the multitude of such actions there is injustice.” The father could not sit by and await final deter- *277 ruination in the child’s Federal action. Having failed to intervene, he should be estopped.)
The child’s causes of action, however, are not barred by the Statute of Limitations, since infancy permits an extension of time to sue to three years after reaching the age of 21 years (Civ. Prac. Act, § 60, substantially incorporated in CPLR 208). Assuming that the only next of kin of a deceased person is an infant child, who is too immature to suffer mental anguish at the time, such an action should be permitted to be brought when sufficient appreciation of the act is acquired; otherwise, one who had violated the grave would be immune because of the fortuitous circumstance that an infant was the only next of kin. Here, however, the child was not the only next of kin and a prior action was instituted in her behalf by her guardian, with the nearest adult next of kin sitting by awaiting its determination.
The child’s cause of action against Dr. Thomas should be dismissed on the ground of collateral estoppel.
In apparent recognition of the res judicata effect of the Federal court judgment, the child’s causes of action herein are asserted only against those who were not defendants in that action, while the father’s are asserted against all defendants. Such res judicata effect would extend to the determination that as a matter of law, because of her immaturity at time of her father’s death, she could not recover compensatory damages for mental distress, and to the verdict in favor of those defendants as to punitive damages. While it is true that Dr. Thomas, not being a party to that action, cannot claim its res judicata benefit, the doctrine of collateral estoppel should be applied in his favor. This doctrine is invoked in the interests of justice where some strict requirement of res judicata is missing, but the matter is viewed as so analogous in essence as to equitably call for the application of such remedial rule.
There is no reason why the force of the holding of the Federal court as a matter of law barring the child’s right to recover compensatory damages should not govern in this case, started immediately after the conclusion of the Federal case. The mere fact that she did not have her day in court on that issue as against Dr. Thomas, although it was ^decided in the prior action adversely to her and in favor of all other defendants connected with the transaction, is not decisive (cf. Israel v. Wood Dolson Co., 1 N Y 2d 116,119). Dr. Thomas’ connection with the matter was fully known and, in fact, he was produced by plaintiff as her witness at the Federal trial. It would be unjust to deny him the effect of a determination on a matter of law, whose *278 principle was equally applicable to all persons involved. As to the possibility of punitive damages against him, plaintiffs concede that he could not be held liable for performing the autopsy pursuant to the permit signed by the Coroner, even if that were unauthorized, and the only basis for liability claimed is his turning the brain over to the neurosurgeon, who dissected and retained it. No finding of punitive damages was returned against the neurosurgeon, who, if anyone, was the party responsible for burial without the brain. Obviously, it would be highly unjust to hold Dr. Thomas subject to liability, when he acted entirely on instructions of others, against whom such a claim has been barred.
It may be unfortunate for plaintiffs that as the result of their own actions there may be no trial on the merits. But their own brief states that under cited New York cases the only one entitled to sepulchre is the father as the nearest adult next of kin, who is an indispensable party, though the child could be joined as an interested party. Nevertheless, he failed to sue or intervene in the Federal court action and permitted the Statute of Limitations to expire. There always is a sense of justice frustrated in upholding the Statute of Limitations, but for that plaintiffs are responsible and, moreover, the statute recognizes defendants’ right to an end of a stale claim.
With respect to the fourth cause of action for excessive funeral charges, under the peculiar circumstances of the case and in view of the conflicting versions given as to the alleged authorization of the brother, there are triable issues of fact.
Accordingly, plaintiffs’ motion is in all respects denied; defendant Thomas is granted summary judgment dismissing as against him the second cause of action by plaintiffs; defendant Schulz is granted summary judgment dismissing as against him the third cause of action asserted by the father, Dionisio Orsini Bonilla.
(February 14, 1966)
This court on its own initiative modifies its opinion herein with regard to the Statute of Limitations applicable to the father’s cause of action for damages for interference with and prevention of the right of sepulchre. As the order determining the motion has not yet been settled and entered (CPLR 2220), there can be no question concerning the court’s power to correct its decision even in the absence of an application for reargument. Reading in the Advance Sheets a decision dealing with the Statute of Limitations applicable to personal injury actions under the Civil Practice Act, the court was alerted to the error here, which came about as the result of plaintiff’s mistaken *279 reliance upon one subdivision of the six-year statute (Civ. Prac. Act, § 48) when another subdivision, unmentioned, afforded the relief desired.
It has been said that actions to recover damages for injury to the person “ present some of the most perplexing problems in the law of limitations” (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 214.10). The definition of “personal injury” is an exceedingly broad one (General Construction Law, § 37-a) and covers every variety of injury to a person’s body, feelings or reputation.
The cause of action herein accrued in May, 1960 and the action was commenced by the father in 1965. The CPLR went into effect on September 1, 1963. CPLR 218 provides that, where a cause of action had accrued prior thereto and was already barred by the applicable Civil Practice Act Statute of Limitations, it remains barred; but if not barred on September 1,1963, plaintiff is to get the benefit of the Civil Practice Act or CPLR Statute of Limitations, whichever is longer. Under the CPLR actions to recover damages for a personal injury are governed by the three-year statute (CPLR 214, subd. 5) except for those specific intentional torts set forth in the one-year statute (CPLR 215). Under the Civil Practice Act personal injury actions were variously covered under the six-, three-, two- and one-year statutes. Plaintiff evidently assumed that, under the Civil Practice Act this action was governed by the three-year statute (Civ. Prac. Act, § 49), and endeavored to avoid the bar by claiming that the six-year statute governed this action as one “to recover upon a liability created by statute” (Civ. Prac. Act, § 48, subd. 2). The court found no basis for such contention inasmuch as this cause of action had long been recognized under ecclesiastical and common law and was merely regulated, not created, by statute.
However, subdivision 3 of section 48, unmentioned in the affidavits and briefs submitted by the parties, is applicable here, the father’s causes of action are governed by the six-year statute, and none of his causes is to be dismissed on that ground.
Subdivision 3 of section 48 of the Civil Practice Act provided a six-year period for “ an action to recover damages for a personal injury, except in a case where a different period is expressly prescribed in this article.” Subdivision 6 of section 49 prescribed a three-year period for personal injury “ resulting from negligence section 50 a two-year period for assault, false imprisonment, malicious prosecution, or malpractice; and section 51 a one-year period for libel or slander. None of these exceptions applies and this cause of action was clearly gov *280 erned under the Civil Practice Act by the six-year statute of subdivision 3 of section 48.
Although the opinion also made reference to the doctrine of equitable estoppel based on the view that there is injustice in multiplicity of actions of this kind by each representative of the family, it was indicated that the doctrine would be justly applicable to this action by the father because he did not intervene in the Federal court action brought by decedent’s infant child and “ permitted the statute of limitations to expire.” Since it is now held that the statute had not expired when he sued, and since there was no real determination on the merits in the infant’s action, the Federal court dismissing her claim for compensatory damages as a matter of law on the ground of her obvious lack of understanding or appreciation of a violation of the right of sepulchre, the father is entitled to a trial of the issues. Defendants’ affirmative defenses of res judicata, collateral estoppel, equitable estoppel and laches remain in the case and will then be for the trial court to determine.
It should be noted that there is no change in the disposition as to the child’s causes of action herein.
Accordingly, plaintiffs’ motion is denied; defendant Thomas is granted summary judgment dismissing as against him the second cause of action asserted on behalf of the infant child; defendants Thomas and Schulz are denied summary judgment dismissing the causes asserted against them by the father.